IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:05-CV-136-FL

| | |
|---|---|
| WILSONIA GORHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Wilsonia Gorham ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is presently before the court on the parties' respective motions for judgment on the pleadings (D.E. 34, 38). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

### A.  Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled.

2

If you cannot make an adjustment to other work, we will find that you are disabled.
. . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### B. Procedural History

Plaintiff filed applications for DIB and SSI on 25 February 2003, alleging a disability onset date of 21 August 2001. (Transcript of Proceedings ("Tr.") 21). The applications were denied initially and on reconsideration; an Administrative Law Judge ("ALJ") upheld the denial in a June 2005 decision following a hearing; the Appeals Council denied review; and plaintiff appealed to this court pursuant to 42 U.S.C. § 405(g). (*Id.*). On motion by the Commissioner before answering plaintiff's complaint, the court remanded the case back to the Commissioner for a de novo hearing because there was no recording of the hearing before the ALJ. (*See id.*; D.E. 14). Additional evidence was submitted to the Commissioner after the remand; a different ALJ held a supplemental hearing in May 2006; and further evidence was subsequently received in the administrative proceeding. (*See* Tr. 21-22).

In a written decision dated 21 December 2006, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. (*Id.* 22, 32). The decision thereby denied plaintiff's original claims, as well as claims for DIB and SSI plaintiff submitted in July 2005. (*Id.*). The case then returned to this court in January 2008 when the Commissioner filed his answer to plaintiff's complaint along with the transcript of the administrative proceedings. (*See* D.E. 15, 16). Plaintiff then moved for remand to the Commissioner (D.E. 17) for consideration of medical evidence she submitted for the first time to this court. The court denied the motion (*see* D.E. 23, 33) and directed the parties to file their motions for judgment on the pleadings.

C.  **Findings of the ALJ**

Plaintiff was 38 years old on the alleged onset date of disability and forty-five years old on the date of the supplemental administrative hearing. (Tr. 30). Plaintiff has a high school education, and her past work experience included work as a pharmaceutical technician. (*Id.* 1012, 1013).

Applying the five-step analysis, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (*Id.* 24 no. 2). At step two, the ALJ found that plaintiff has several medically determinable impairments which are severe within the meaning of the regulations under the Social Security Act, 20 C.F.R. §§ 404.1520(c), 416.920(c): fibromyalgia; a history of idiopathic cholingeric urticaria (*i.e.*, heat-induced hives); Raynaud's phenomenon (*i.e.*, a condition resulting in discolorations of the fingers and/or toes in response to temperature changes or emotional events); degenerative arthritis; asthma; a history of obstructive sleep apnea; lateral epicondylitis (*i.e.*, tennis elbow); obesity; and a depressive disorder. (*Id.* 24 no. 3). At step three, the ALJ found that plaintiff did not have any impairments that met or medically equaled, singly or in combination, one of the impairments listed in Appendix 1 to 20 C.F.R. pt. 404,

4

subpt. P. (*Id.* 24 no. 4).

At step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a wide range of light, unskilled work, including the ability to lift up to 20 pounds and to lift and carry 10 pounds frequently; the ability to sit, stand, and walk for up to 6 hours in an 8-hour day; the need to change sitting and standing positions at 30-minute intervals; the ability to perform overhead reaching only occasionally; the need to avoid tasks requiring exposure to temperature extremes, excessive exposure to respiratory irritants, and concentrated exposure to chemicals; and the need to do only simple, routine, repetitive tasks ("SRRTs") in a non-production setting. (*Id.* 25 no. 5). Based on this RFC, the ALJ found that plaintiff could not perform any of her past relevant work. (*Id.* 30 no. 6). At step five, the ALJ found that plaintiff could perform a range of light work available in the national economy, including the jobs of photocopy machine operator, office helper, and cashier II, as described in the *Dictionary of Occupational Titles* (4th ed., rev. 1991) ("*DOT*").[2] (*Id.* 31 no. 10). In making this finding, the ALJ accepted the testimony of a vocational expert specifying these jobs as among those that could be performed by a hypothetical person purportedly having the same capabilities as those of plaintiff. (*Id.* 21, 31 no. 10).

## DISCUSSION

### A. Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by

---

[2] The *DOT* is a publication of the U.S. Department of Labor which provides a description of key attributes of numerous jobs. A copy is posted at http://www.oalj.dol.gov/libdot.htm. The Regulations permit the Commissioner to take administrative notice of the information in the DOT in making disability determinations. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). The *DOT* codes for the identified jobs are as follows: photocopy machine operator, *DOT* code 207.685-0147; office helper, *DOT* code 239.567-010; and cashier II, *DOT* code 211.462-010.

substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an

6

Case 4:05-cv-00136-FL   Document 41   Filed 09/14/09   Page 6 of 11

adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## B. ALJ's Reliance on Vocational Expert's Opinion

The sole ground advanced by plaintiff for reversal of the ALJ's decision is that the ALJ erred at step five of the sequential analysis in relying on the testimony of the vocational expert. She alleges that reliance was erroneous for two reasons.

The first is that the ALJ's hypothetical to the vocational expert did not match the RFC as found by the ALJ, as required. The purpose of a vocational expert is to assist the ALJ in determining whether there is work available in the national economy a claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). "In order for a vocational expert's opinion to be relevant or helpful, . . . it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.*, 889 F.2d at 50-51. Here, the hypothetical did not include the restriction in the RFC that plaintiff was limited to SRRTs. (Tr. 1034-35). Plaintiff contends that the SRRT limitation restricts a person to jobs at no higher than reasoning development level 1 under the *DOT*. Without the SRRT limitation having been given to the vocational expert, all of the jobs she testified plaintiff was capable of performing were at higher reasoning levels, either level 2 in the case of photocopy machine operator and office helper, or level 3 in the case of cashier II.

The second reason advanced by plaintiff why the ALJ could not properly rely on the vocational expert's testimony is that there was a conflict between the testimony and the *DOT* which the ALJ did not resolve, as required under Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *4 (4 Dec. 2000). The purported conflict is, again, the disparity between the jobs the vocational expert testified plaintiff could perform and the reasoning level of which plaintiff was capable under the *DOT* given

7

the SRRT limitation. The ALJ did not recognize this alleged conflict and instead found that "the vocational expert's testimony is consistent with the information contained in the [*DOT*]." (Tr. 31).

Contrary to plaintiff's contention, the limitation to SRRTs does not restrict a person to jobs at reasoning level 1. Rather, the SRRT limitation is consistent with jobs up to reasoning level 2. This court and others have reached this conclusion in other cases. *See Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005); *Burnette v. Astrue*, No. 2:08-CV-009-FL, 2009 WL 863372, at *5, *15-17 (E.D.N.C. 24 Mar. 2009) (adopting analysis in *Meissl v. Astrue*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005); *Miller v. Astrue*, Civ. Act. No. 2:06-00879, 2008 WL 759083, at *2 (S.D. W. Va. 19 Mar. 2008) (same); *but see, e.g., Jernigan v. Astrue*, No. 7:07-Cv-201-BO, 2008 WL 4772202, at *3 (E.D.N.C. 28 Oct. 2008) (holding that the limitation of claimant to SRRTs precluded her from returning to her prior job requiring reasoning level 3 while noting that SRRTs are at reasoning level 1).

The analysis in the leading case of *Meissl* is instructive. A central argument of the claimant there was that the ability to perform *simple* routine repetitive tasks does not entail the ability to perform at reasoning level 2 because level 2 requires the capacity to carry out *detailed* instructions. *Meissl*, 403 F. Supp. 2d at 983-84. Specifically, reasoning level 2 requires the ability to "'[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions'" and to "deal with problems 'involving a few concrete variables.'" *Id.* at 983 (quoting *DOT* 1011) (emphasis added). In contrast, reasoning level 1 requires only the ability to "'[a]pply commonsense understanding to carry out *simple* one- or two-step instructions' in 'standardized situations with occasional or no variables.'" *Id.* (quoting *DOT* 1011) (emphasis added). Reasoning level 2 was therefore purportedly comparable to the higher level of two categories under the Regulations relating

8

to the ability to follow instructions, that is, the ability to follow "detailed or complex instructions," as opposed the ability to follow "short and simple instructions." *Id.* at 984 (internal quotations omitted).

In rejecting the claimant's contention, the court noted that the word "detailed" in the level 2 definition is modified by the phrase "but uninvolved," thereby limiting the degree of reasoning ability required. *Id.* at 984-85. Conversely, inclusion of the word "repetitive" in the term "simple routine repetitive tasks" indicated a somewhat higher level of ability than if the word "simple" stood alone. *Id.* at 984. The court also found that the two-category scheme under the Regulations did not equate, as claimant urged, to the more refined scheme used in the DOT, which included six categories, reasoning levels 1 to level 6. *Id.* The court concluded that the SRRT limitation does not preclude jobs at reasoning level 2. *Id.* at 985. The court adopts the reasoning in *Meissl* here, as it did in *Burnette*.

The determination that SRRTs encompass reasoning level 2 jobs negates plaintiff's contentions of reversible error. While plaintiff is correct that the ALJ erred by omitting the SRRT limitation from his hypothetical, the omission was immaterial with respect to the jobs of photocopy machine operator and office helper because these jobs are at reasoning level 2 and the SRRT limitation therefore does not preclude plaintiff from performing them.

Further, substantial evidence in the record shows that there is a significant number of these jobs available to plaintiff in the national economy in satisfaction of step five of the sequential analysis. Specifically, the vocational expert testified that there were 50,000 to 100,000 positions for photocopy operators available nationally, including 1,000 to 2,000 in North Carolina, and 100,000 to 200,000 positions for office helper available nationally, including 1,000 to 2,000 in North

Carolina. (Tr. 31, 1035). *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir.1979) (noting that as few as 110 jobs constitute a significant number). The omission of the SRRT limitation from the hypothetical was therefore harmless error. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir.1994) (holding that error by ALJ does not require remand where ALJ would have reached the same result notwithstanding the error); *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 837 (N.D. W. Va. 2009) (holding that the ALJ's failure to include machinery exposure limitation in hypothetical to vocational expert was harmless error not requiring remand because ALJ identified three jobs existing in significant numbers that accounted for the limitation and there was no indication that inclusion of the limitation would have resulted in a different finding by the ALJ) (citing *Mickles*).

As to plaintiff's allegation of an inconsistency between the vocational expert's testimony and the *DOT*, none exists with regard to the photocopy machine operator and officer helper jobs. Again, because these jobs are at reasoning level 2, the SRRT limitation does not preclude plaintiff from performing them. The ALJ committed no error in finding no inconsistency between the vocational expert's testimony and the *DOT* with regard to these jobs.

The third job identified by the vocational expert, cashier II, was, of course, at reasoning level 3. If the SRRT limitation restricted plaintiff to jobs requiring a reasoning level no greater than level 2, the omission of the limitation from the hypothetical would have been material with respect to the cashier II job because it would preclude plaintiff from performing that job. The Commissioner does not contend that the record in this case establishes that plaintiff could perform the job of cashier II. (Def.'s Mem. 9). The court need not decide whether or not the SRRT limitation would preclude plaintiff from performing the cashier II position because, as discussed, there is substantial evidence that there are a significant number of other jobs available to plaintiff in the national economy.

Therefore, any error by the ALJ with respect to the cashier II position would not have changed his determination at step 5 of the sequential analysis and was therefore harmless.

## III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion for judgment on the pleadings be GRANTED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 14th day of September, 2009.

James E. Gates
United States Magistrate Judge